## Stollar v. Continental Can Co., Inc.

*George B. Stegenga*, for plaintiffs.

*Barron McCune* and *Gaylord W. Greenlee*, for defendant.

WEINER, J., October 7, 1960.—This is an action in assumpsit, brought by a number of plaintiffs against the Continental Can Company, Inc., a corporation. Plaintiffs are all employes of defendant corporation in its Hazel Atlas Division in Washington County, and they all assert a right to recover wages allegedly due them under the so-called Women's Equal Pay Law of July 7, 1947, P. L. 1401, 43 PS §335. To this complaint, defendant has filed several preliminary objections, to wit, a motion for a more specific complaint, preliminary objections in the nature of a demurrer and preliminary objections raising both the question of jurisdiction and of the constitutionality of this Act of 1947.

The particular section of the act involved is section 2, which reads as follows:

"No employer shall discriminate in any way in the payment of wages or salaries in any occupation as between the sexes, or pay any female in his employ in any occupation, salary or wage rates less than the rates paid to male employees for comparable work: Provided, however, That nothing herein contained shall prohibit a variation in salary or wage rates based upon

either difference in seniority, experience, training, skill or ability, or difference in duties and services performed, or difference in the shift or time of the day worked, or any other reasonable differentiation, except difference in sex."

The basis of the complaint of these plaintiffs is that they were paid less than the male employes doing the same or comparable work, and that there exists no variation based on seniority, experience, training, skill or ability, or difference in duties and services performed, difference in shift or time of day worked, or any other reasonable differentiation, and that the difference in wages actually paid was due solely to the difference in sex.

In its motion for a more specific pleading, defendant originally contended that the complaint of plaintiffs, contrary to Rule 1019 of the Pennsylvania Rules of Civil Procedure, failed to state specifically whether the claims set forth therein are based upon a writing; that in fact, the claims made had to be judged in the light of the collective bargaining agreement in effect at all applicable times. Consequently, defendant claimed, the bargaining agreement should be attached to the complaint so that the court might have the benefit of that agreement before it. The court found much merit in this contention of defendant, since the complaint does aver the existence of a contractual relationship between plaintiffs and defendant. However, that objection has now been met by a stipulation between plaintiffs and defendant filed September 28, 1960, wherein it is stipulated and agreed that the collective bargaining agreement between the Continental Can Co., Inc., Hazel Atlas Division, and the Glass Bottle Blowers Association, the admitted collective bargaining agent for these plaintiffs, is the contract attached to the stipulation and marked exhibit A.

By the same stipulation, it is agreed that the wage

rates in effect in that plant in question under said contract, and pursuant thereto, are those wage rates attached to said stipulation and marked exhibit B. These wage rates, at the times applicable under the complaint, provide for a variance between male and female employes doing the same work, to wit, as packers and as checkers. The variance for the different years discloses a difference varying from 19 cents to 22 cents per hour.

Section 4 of the Act of July 7, 1947, P. L. 1401, provides as follows:

"(a) An employer who violates the provisions of Section 2 of this act shall be liable to the employee or employees affected in the amount of their unpaid wages. Action to recover such wages may be maintained in any court of competent jurisdiction by any one or more employees. Any agreement between the employer and an employee to work for less than the wage to which such employee is entitled under this act shall be no defense to such action. The court in such action shall in addition to any wages and damages, allow a reasonable attorney's fee and costs of the action to the plaintiff. . . .

"(b) Any action, pursuant to the provisions of this act, must be brought within three years from the date upon which the violation complained of occurs.

"(c) Any employee may directly or through his attorney, agent or collective bargaining representative waive, compromise, adjust, settle or release any claim which such employee may have under this act, either before or after commencement of suit thereon, and a waiver, compromise adjustment, settlement or release of any such claim by such employee or his attorney, agent or collective bargaining representative shall be a complete satisfaction of such claim and a complete bar to any action based on such claim."

A reading of these subsections discloses what appears to be an inconsistency between subsection (a) and subsection (c). Whereas in subsection (a) it is provided that any agreement between the *employer* and an *employe* to work for less than the wage to which such employe is entitled under this act shall be no defense, subsection (c) provides that any employee may through its collective bargaining representative waive any claim which such employe may have under this act either before or after commencement of suit thereon. The court cannot read the minds of the legislature in providing for these contrary provisions, to wit, that the employe may not validly agree to work for less than the wage to which he or she may be entitled but that the employe's collective bargaining representative might legally do so. We must recognize the legislation itself as a valid exercise of the police power of the legislature in its effort to protect the economic welfare of its citizens. We must likewise recognize that collective bargaining has become a fundamental principle in our American way of life in the general desire to improve the working conditions and economic welfare of the country, and this recognition is disclosed by appropriate Federal and State legislation protecting the right of collective bargaining.

The National Labor Relations Act of June 23, 1947, 29 U. S. C. A. §151, 61 Stat. 136, requires employers, and the labor organizations which represent their employes, to bargain collectively concerning the terms and conditions of employment to be observed between them. Full freedom is given to establish the wage rates to be paid the employes by the employer, subject only to the minima contained in the Fair Labor Standards Act of June 23, 1938, 29 U. S. C. A. §201, 53 Stat. 1060, where, as in this case, the Act of Congress applies. And our appellate courts have construed such

agreements as a contract which defines and limits the rights and remedies an employee possesses: Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145. And where there is actual conflict between the provisions of a State statute and the National Labor Relations Act in regard to regulation of labor union activities in an industry affecting interstate commerce, the State act must give way to the Federal act: Garner v. Teamsters, Chauffeurs and Helpers, Local Union Co. No. 776, 373 Pa. 19.

This court is of the opinion that if there is any inconsistency between subsection (a) and subsection (c), the former must yield to the latter by reason of its social and economic implications and the legal protection particularly affecting the rights of collective bargaining and the benefits resulting therefrom. In the light of this principle, we are compelled to hold that the collective bargaining agreements applicable to this complaint and the wage rates made in pursuance and under said collective bargaining agreement constitute a waiver of the rights of these plaintiffs to recover in their present action. This principle, that private rights must yield to public rights where there is a conflict, is fundamental in a democracy and has often been recognized by the courts. The Supreme Court of the United States, in the case affirming the holding of the Supreme Court of Pennsylvania in the Garner v. Teamsters et al. case, supra, reported in 346 U. S. 485, reiterated that principle in the following words:

"We conclude that when federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. To the extent

that the private right may conflict with the public one, the former is superseded."

As to the question of jurisdiction, we are satisfied that neither the Fair Labor Standards Act nor the National Labor Relations Act bar the jurisdiction of this court to entertain these suits and to consider the legal effect thereof. This court is of the opinion that the Fair Labor Standards Act itself impliedly recognizes the rights of the State legislature to enact measures of the type here in question and that the National Labor Relations Act is not such a preemption of the matter by Congress so as to preclude the enactment of the type of legislation here in question.

In the opinion of the court, this attempt of plaintiffs to set aside the provisions of their collective bargaining agreement is inconsistent with the national and State statutory schemes protecting such agreements, and is in conflict not only with the rights of defendant under their collective bargaining agreements, but also is adverse to the interest of plaintiffs' collective bargaining agent, a status conferred upon it by the National Labor Relations Act. When a recognized collective bargaining agent negotiates an agreement on behalf of the members of the union it represents, and that agreement is approved and ratified by those members, it is binding upon them all. To permit an employe, or as in this case, a group of them, to set aside or disregard that agreement or any portion thereof would destroy the stability that such agreements must have and would result in making a mockery and a farce of labor-management negotiations and bargaining. We refuse to strike down and destroy what has taken labor so many years to attain.

Therefore, in accordance with our position in the matter, that this action cannot be maintained by these plaintiffs against this defendant, we are compelled to enter the following

*Order*

And now, October 7, 1960, it is hereby ordered and decreed that the preliminary objection of defendant in the nature of a demurrer be and the same is hereby sustained, and judgment is hereby directed to be entered in favor of defendant.

Concurring: Carson, P. J., and Cummins, J.